# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOE FLORES, et al., | ) | 1:04-CV-6405 AWI DLB |
| Plaintiffs, | ) ) ) | ORDER STRIKING AMENDED COMPLAINT FILED ON MAY 10, 2007 |
| v. | ) ) | ORDER DENYING MOTIONS TO |
| DENNIS HAGOBIAN, et al., | ) ) | DISMISS AND MOTION TO STRIKE AS MOOT |
| Defendants. | ) ) ) | (Documents #100, #104, #107, #130, #138, #167, #194, and #198) |

## BACKGROUND

On October 15, 2004, Plaintiffs, two individuals in pro se and several agricultural corporations and limited liability companies, filed suit against a number of individuals, trusts, and corporations (collectively "Defendants") for alleged fraudulent transfers under the Uniform Fraudulent Transfer Act, Cal. Civ. Code § 3439, and for alleged improper distributions made in violation of the California Corporations Code.

On November 18, 2004, several of the Defendants filed a motion to dismiss for lack of subject matter jurisdiction, or, in the alternative, to stay Plaintiffs' complaint pending the outcome of an appeal in the related case of <u>Flores v. DDJ, Inc., et al.</u>, 1:99-CV-AWI DLB.  On January 10, 2005, a hearing was held concerning the motion before District Court Judge Oliver W. Wanger.[1]  At this hearing, Plaintiffs advised the court that involuntary bankruptcy proceedings had been instituted against Plaintiff DDJ, Inc. and Plaintiff DDJ LLC, an automatic

---

[1] This case was later transferred from the docket of Judge Wanger to the undersigned.

1  stay was in place, and a trustee had not yet been appointed.  On January 11, 2005, Judge Wanger
2  issued an order stating that the court would defer ruling on the motion to dismiss pending
3  notification whether the case would proceed in Bankruptcy Court.  Judge Wanger noted that a
4  determination should expeditiously be made whether this case will go forward or whether the
5  case would be pursued on behalf of the non-bankrupt parties, and ordered the parties to file a
6  status report on or before January 21, 2005.

7  On January 27, 2005, Plaintiff Connie Flores filed a status report that stated that Plaintiff
8  DDJ, Inc. and Plaintiff DDJ LLC had filed for bankruptcy on January 7, 2005.  The report
9  identified the Chapter 7 Trustees and informed the court of the dates of the creditors' meetings.
10 On March 1, 2005, Judge Wanger issued an order regarding the January 27, 2005 status report.
11 In relevant part, this order stated:

> The report did not, however, inform the Court whether the Trustees will be joined as plaintiffs in this case and whether the Trustees will allow the case to proceed. The dates for the creditor meetings have come and gone, and Plaintiffs have not informed the Court whether this case will proceed. In their status report, Plaintiffs also requested 60 days to file an amended complaint, in order to complete the meetings of creditors and seek the joinder of the Chapter 7 Trustees.
> The automatic stay prevents this Court from making any rulings in this case, including ruling on the unopposed motion to dismiss and on any motions to file an amended complaint. The Court cannot move forward until a definite determination has been made as to whether this case will proceed or whether the automatic stay will continue to be in effect.
> Counsel are requested to furnish the Court with another status report within ten days on or before March 8, 2005.

19 On March 9, 2005, Plaintiff Connie Flores filed another status report indicating that she
20 and Plaintiff Joe Flores had met with both Trustees and discussed the fraudulent transfers.  The
21 report states that the Trustees indicated they were in favor of proceeding with the action.
22 Plaintiff Connie Flores requested 60 days to substitute counsel, review the case, prepare
23 summaries for the Trustees and file an amended complaint.

24 The court did not issue an order in response to the second status report. Plaintiffs never
25 filed another status report.  Over a year passed, and no document, other than an order
26 substituting attorneys, was filed by the court or any party.

On April 25, 2006, Trustee James Edward Salven, Trustee for Plaintiff DDJ, Inc., and Trustee Beth Maxwell Stratton, Trustee for Plaintiff DDJ LLC, filed a joint motion to intervene in this action.  Trustee Salven and Trustee Stratton contended that as Trustees for Plaintiff DDJ, Inc. and Plaintiff DDJ LLC, they should be allowed to intervene in this action.  While Plaintiff Joe Flores and Plaintiff Connie Flores opposed this request, on September 13, 2006, Magistrate Judge Dennis L. Beck granted the Trustee's request.

Nothing then happened in this action until May 10, 2007, when Plaintiffs filed an amended complaint.

Also on May 10, 2007, Plaintiffs filed a motion to calendar a hearing date certain to commence proceedings.   The basis of Plaintiffs' motion was that the stay had been lifted when the Trustees lost their avoidance power under 11 U.S.C. § 544(a).  Trustee Stratton, filed an opposition on May 16, 2007.  On June 19, 2007, Magistrate Judge Beck denied Plaintiffs' motion, reasoning that an automatic stay pursuant to 11 U.S.C. § 362(a)(1) applied to this action and the Trustee's failure to take certain steps during the bankruptcy case did not lift the stay.

On July 19, 2007, Defendants Taft & Traner, Inc., Eco Farm Fields, Inc., ECO Farms Sales, Inc., Norman Traner, and Steven Taft ("T&T Defendants") filed an answer to the amended complaint.

On July 23, 2007, Defendants Georgeson & Belardinelli, C. Russell Georgeson, and Richard Belardinelli ("Georgeson Defendants") filed a motion to strike and a motion to dismiss for lack of jurisdiction.   On July 24, 2007, Georgeson Defendants filed a motion to dismiss for failure to state a claim.

On August 8, 2007, Trustee Salven, on behalf of Plaintiff DDJ, Inc., joined in the amended complaint.

On August 8, 2007, the court vacated the pending hearing on the Georgeson Defendants' motions and set a new hearing date.   Plaintiffs were ordered to file any opposition by August 27, 2007 and Georgeson Defendants were ordered to file any reply brief by September 10, 2007.

3

On August 20, 2007, Plaintiff Joe Flores filed a copy of orders issued by the Bankruptcy Court, along with a request that the court calender a hearing date to commence proceedings in this action.  The first Bankruptcy Court order, dated August 9, 2007 and signed by Bankruptcy Court Judge Whitney Rimel, denied Plaintiff Joe Flores's and Plaintiff Connie Flores's motion for relief from the automatic stay in this action as to DDJ, Inc. as unnecessary because the Trustee for DDJ, Inc. had joined in the amended complaint.   The second Bankruptcy Court order, also dated August 9, 2007 and signed by Judge Rimel, grants Plaintiff Joe Flores and Plaintiff Connie Flores's motion for relief from the automatic stay in this action as to DDJ LLC.

On August 27, 2007, Defendants Dennis Hagobian, Victoria Hagobian, the Dennis Hagobian Residential Trust, the Victoria Hagobian residential trust, Yosemite Technologies, Inc., and Rod Christensen  ("Hagobian Defendants") filed a motion to dismiss.   On August 28, 2007, Defendant Russell Davidson joined in the Hagobian Defendants' motion.

On August 27 2007 and August 28, 2007, Plaintiff Joe Flores filed oppositions, which Plaintiff Connie Flores joined, to Georgeson Defendants' motion to dismiss for lack of subject matter jurisdiction and motion to strike.

Pursuant to Plaintiffs' request, on August 31, 2007, Magistrate Judge Beck issued an order that recognized the stay in this action had been lifted on August 9, 2007 and ordering Defendants to respond to the amended complaint within twenty days.

On September 8, 2007, Trustee Salven, on behalf of Plaintiff DDL LLC, joined in the amended complaint.[2]

On September 17, 2007, Trustee Salven filed an objection to Georgeson Defendants' motions.   Trustee Salven contends that Georgeson Defendants' motion were filed prematurely because this action was stayed when the Georgeson Defendants filed their motions.   On September 19, 2007, Plaintiff Joe Flores and Plaintiff Connie Flores joined in Trustee Salven's

---

[2] It appears that at some point Trustee Stratton was replaced by Trustee Salven as trustee for Plaintiff DDJ LLC.

4

objections.

On September 28, 2007, Georgeson Defendants filed a motion for sanctions. Georgeson Defendants contend that Plaintiffs' September 17, 2007 and September 18, 2007 objections are improper because Plaintiffs were only given until August 27, 2007 to file any oppositions. Georgeson Defendants request that the late opposition papers be struck and the court impose sanctions upon Plaintiffs for costs. On October 19, 2007, Plaintiffs filed an opposition to the motion for sanctions.

On October 1, 2007 and October 2, 2007, Plaintiffs filed oppositions to Hagobian Defendants' motion to dismiss.

On October 17, 2007, Defendants Judith Yeramian, the Lee Yeramian Family Trust, the Lee Yeramian Exempt QTIP Trust, and the Judith Mary Yeramian Family Trust ("Yeramian Defendants") filed a motion to dismiss. On November 16, 2007, Plaintiffs filed oppositions to this motion.

On October 19, 2007, T&T Defendants filed a motion to dismiss for lack of subject matter jurisdiction. On November 14, 2007 and November 16, 2007, Plaintiffs filed oppositions to T&T Defendants' motion.

The court then took the pending motions to dismiss, motion to strike, and motion for sanctions under submission. The court now issues this memorandum opinion.

## DISCUSSION

**A. Validity of Amended Complaint**

Before addressing the merits of the pending motions, the court finds it necessary to address the stay Judge Wanger ordered in the action. The procedural background of this action is confusing. Some parties have questioned whether actions taken during the stay are valid. Thus, the court turns to the stay and the validity of filings made during the stay.

In late 2004 and early 2005, Judge Wanger held hearings concerning Defendants' motion to dismiss the original complaint. During those hearings, Plaintiff Joe Flores and Plaintiff

5

Connie Flores informed Judge Wanger that Plaintiff DDJ, Inc. and Plaintiff DDJ LLC had filed for bankruptcy.  Plaintiff Joe Flores and Plaintiff Connie Flores told Judge Wanger that this action had automatically been stayed.   It is unclear what statute or rule Plaintiff Joe Flores and Plaintiff Connie Flores believed automatically stayed this action.

The court presumes that, as is this court's custom, Judge Wanger stayed this action in light of Plaintiff DDJ, Inc.'s and Plaintiff DDJ LLC's filing for bankruptcy.  Before proceeding further, Judge Wanger determined that the parties and the court needed to know whether the case would proceed in the Bankruptcy Court and whether the case would be pursued on behalf of the Trustees in this court and/or the non-bankrupt parties.  See Order 1/11/05.  Judge Wanger recognized that there was a stay in this action and the court could not proceed until the parties informed the court whether the Trustees would join in this action.  See Order 3/1/05.  On March 9, 2005, Plaintiff Connie Flores filed a status report indicating that the Trustees had still not decided whether to join in this case.  Based on these orders, the court finds this action was stayed pursuant to Judge Wanger's order.

While the Trustees intervened in this action on September 13, 2006, the amended complaint filed on May 10, 2007, was filed by Plaintiff Joe Flores and Plaintiff Connie Flores but lists Plaintiff DDJ, Inc. and Plaintiff DDJ LLC as Plaintiffs.    The Trustee for Defendant DDJ, Inc. joined in the amended complaint on June 6, 2007, thus lifting the stay as to Defendant DDJ, Inc.  On August 9, 2007, Bankruptcy Judge Whitney Rimel lifted the stay in this action as to Defendant DDJ LLC.  The Trustee for Plaintiff DDL LLC joined in the amended complaint on September 8, 2007.

Based on a careful review of the file, the court finds that this action was stayed from at least January 18, 2005, when Judge Wanger found the action had been stayed, until August 9, 2007, when Judge Rimel lifted the stay.  Judge Wanger explicitly found this action was stayed. Plaintiff Joe Flores and Plaintiff Connie Flores clearly recognized there was a stay because they believed it was necessary to file their May 10, 2007 motion for an order to proceed with this

6

action; Such a motion would not have been necessary if this action was not stayed. Judge Beck confirmed that a stay was in place when he denied Plaintiffs' motion to proceed. Judge Rimel further confirmed the stay was in place by ordering that the stay be lifted on August 9, 2007. Thus, at the time the amended complaint was filed on May 10, 2007, this action was stayed.

Although the parties have not raised the issue, the court may sua sponte consider whether filings done in violation of the stay are void. See O'Donnell v. Vencor Inc., 466 F.3d 1104, 1110 (9th Cir. 2006) (applying stay found in Section 362). Actions taken in violation of a bankruptcy stay are void. See O'Donnell, 466 F.3d at 1110 (applying stay found in Section 362); Gruntz v. County of Los Angeles, 202 F.3d 1074, 1082 (9th Cir. 2000) (en banc). The court does recognize the legal basis of stay ordered by Judge Wanger is subject to question. It appears to the undersigned that Judge Wanger entered the stay to protect the bankruptcy parties' estate until such time as the Trustee for Plaintiff DDJ, Inc. and Trustee for Plaintiff DDJ LLC could decide if they desired to proceed with this action. While the Trustee for Plaintiff DDJ, Inc. and Trustee for Plaintiff DDJ LLC both intervened prior to the filing of the amended complaint, the Trustee for DDJ, Inc. did not join in the amended complaint until June 6, 2007 and the Trustee for DDJ LLC did not join in the complaint until after the stay had been lifted by Judge Rimel. Finally, a finding that the stay in this action was in place until August 9, 2007 is supported by the fact that Judge Wanger and Judge Beck both found a stay in place. In addition, Judge Rimel lifted a stay. Had the action not really been stayed or the Trustee's intervention automatically lifted the stay, Judge Rimel would have had no stay to lift on August 9, 2007. The fact Judge Wanger, Judge Beck, and Judge Rimel all took actions under the belief that this action was stayed is evidence to bolster the court's belief this action was stayed until August 9, 2007. Because the stay ordered by Judge Wanger in early January 2005 was still in place on May 10, 2007, when Plaintiffs filed the amended complaint, the court finds the amended complaint must be struck.

The court does recognize that Judge Wanger's orders mentioned an automatic stay in this action. Judge Wanger's conclusion concerning an automatic stay appears to stem from Plaintiff

Joe Flores and Plaintiff Connie Flores informing Judge Wanger that an automatic stay was in place. The court is unclear as to what statute automatically stayed this action. The automatic stay provisions found in 11 U.S.C. § 362 prohibit judicial actions *against the debtor* and acts to obtain possession of the property of the estate. 11 U.S.C. § 362; In re White, 186 B.R. 700, 703 (B.A.P. 9th Cir. 1995). This action is not against Plaintiff DDJ, Inc. or Plaintiff DDJ LLC nor is it an attempt to obtain the property of Plaintiff DDJ, Inc. or Plaintiff DDJ LLC. Thus, it does not appear Section 362 automatically stayed this action.[3]

However, even if the court assumes Judge Wanger stayed the case based solely on the parties' misapplication of Section 362, the result is still a finding that the amended complaint must be struck. It is a basic proposition that "all orders and judgments of courts must be complied with promptly." Maness v. Meyers, 419 U.S. 449, 458 (1975); Britton v. Co-op Banking Group, 916 F.2d 1405, 1410 (9th Cir. 1990). If a party believes that an order is incorrect, the remedy is to appeal. Maness, 419 U.S. at 458. This proposition does "not mean, of course, that every ruling by a presiding judge must be accepted in silence," and parties may object. Id. at 459. "But, once the court has ruled, counsel and others involved in the action must abide by the ruling and comply with the court's orders." Id. at 459. Thus, even assuming that the stay in this action was somehow entered in error, the parties were still obligated to follow Judge Wanger's order staying this action. If the parties believed Judge Wanger had adopted an impermissible practice by staying this action, the remedy would have been to raise the issue in a further motion or on appeal rather than to repeatedly violate Judge Wanger's order by filing an amended complaint and motions. See United States v. Galin, 222 F.3d 1123, 1127 (9th Cir. 2000). Any party to this action was free to file a motion requesting the stay be lifted because an automatic stay pursuant to Section 362 was improper. No party filed such a motion. In fact, the parties' and Trustees' actions indicate they too believed a stay was in place. Thus, any questions

---

[3] As stated above, the court finds Judge Wanger entered the stay pursuant to his inherent authority to allow the Trustees time to decide if they wished to join the complaint. Such a stay has no bearing on whether a stay pursuant to Section 362 was also in place.

8

as to the validity of the stay are not grounds for the court to find that no stay was in place.

The court realizes that by striking the amended complaint this action will be delayed. The court also realizes that, most likely, the parties and the court will find themselves back in the present situation at some point in the future. Most likely, Plaintiffs will file a second amended complaint that contains claims and causes of action similar, if not identical, to the amended complaint. Defendants will then file motions attacking any second amended complaint that are essentially the same as the motions currently pending before the court. While it is tempting to find that the issue of judicial economy would best be served by simply proceeding on the amended complaint, the court believes this is a situation where "form must be placed over substance" given the totality of the circumstances of this action. The court is not unfamiliar with many of the parties in this action. The court has grave concerns that if the issue of the amended complaint being filed during the stay is not resolved now at some later time a party will raise the issue of the amended complaint's validity. Several parties have already suggested that the amended complaint and some of the motions should be disregarded because they were filed during the stay. The delay that will be caused by "starting over" at this time will result in far less delay than if the parties are allowed to continue to litigate on the amended complaint only for some party to challenge the amended complaint's validity in the future when that party decides it would be a good strategy. Thus, despite the equitable reasons to allow this action to proceed on the amended complaint, the court finds that it must be struck.

**B. Operative Pleading and Filing a Second Amended Complaint**

Having struck the amended complaint, the operative pleading on file becomes the original complaint. The November 18, 2004 motion to dismiss for lack of subject matter jurisdiction over the original complaint remains pending. However, the court will not address that motion at this time. Plaintiffs have clearly indicated that do not wish to proceed on the original complaint and wish to file an amended complaint. As such, the court will give Plaintiffs leave to file a second amended complaint.

Some Defendants have questioned whether Plaintiffs need leave of court to file an amended complaint because some Defendants responded to the original complaint by filing a motion to dismiss. Rule 15(a) of the Federal Rules of Civil Procedure provides that a "party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. . . . Otherwise a party may amend only by leave of court. . . ." A motion to dismiss is not a "responsive pleading" that would terminate a plaintiff's right to amend the complaint. Doe v. United States, 58 F.3d 494, 497 (9th Cir.1995); Schreiber Distrib. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir.1986); Mayes v. Leipziger, 729 F.2d 1389 605, 607 (9th Cir.1984); Breier v. Northern California Bowling Proprietors' Ass'n, 316 F.2d 787, 789 (9th Cir.1963). Because no defendant filed an answer to the original complaint, Plaintiffs did not need leave of court to file an amended complaint. See Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1530 (9th Cir. 1995); Doe, 58 F.3d at 497. Thus, while the court gives leave to amend, Plaintiffs are free to file a second amended complaint even without leave of court.

**C. Motion for Sanctions**

Georgeson Defendants have filed a motion for sanctions. The basis of this motion is Trustee Salven's objection to the Georgeson's motions on behalf of Plaintiff DDJ, Inc. and Plaintiff DDJ LLC, which was then joined by Plaintiff Joe Flores and Plaintiff Connie Flores. Georgeson Defendants point out that by court order Plaintiffs needed to file any opposition to Georgeson Defendants' motions by August 27, 2007, but Plaintiffs filed oppositions on September 17, 2007 and September 18, 2007. In opposing Georgeson Defendants' motion for sanctions, Plaintiff Joe Flores contends that the September 17, 2007 and September 18, 2007 filings were not oppositions but merely an objection that pointed out Georgeson Defendants' motions were filed during the stay.

The court has the inherent power to levy sanctions, including attorneys' fees, when a party has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons." Roadway Express, Inc. v. Piper, 447 U.S. 752, 766 (1980); Rink v. Gomez, 239 F.3d 989, 991 (9th Cir.

2001).  While the court's inherent power extends to all litigation abuses, the litigant must have "engaged in bad faith or willful disobedience of a court's order."  <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32, 46-47 (1991); <u>Fink</u>, 239 F.3d at 992.    The court also may levy sanctions pursuant to 28 U.S.C. § 1927 against any attorney who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.  Sanctions under Section 1927 also require the court to find recklessness or bad faith.  <u>Cline v. Industrial Maintenance Engineering & Contracting Co.</u>, 200 F.3d 1223, 1236 (9th Cir. 1999).  The Ninth Circuit assesses "an attorney's bad faith under a subjective standard.  Knowing or reckless conduct meets this standard."  <u>MGIC Indem. Corp. v. Moore</u>, 952 F.2d 1120, 1121-22 (9th Cir.1991).  "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent."  <u>Cline</u>, 200 F.3d at 1236; <u>Estate of Blas v. Winkler</u>, 792 F.2d 858, 860 (9th Cir. 1986).   Bad faith can be found based on, among other factors, the number and length of the pleadings, the timing involved in many of the filings, and the substance of the claims asserted. <u>Salstrom v. Citicorp Credit Services, Inc.</u>, 74 F.3d 183, 185 (9th Cir. 1995).    A finding of frivolous by itself is insufficient to support an award under section 1927.  <u>Estate of Blas v. Winkler</u>, 792 F.2d 858, 861 (9th Cir. 1986).

    Given the fact that the amended complaint is being struck and the oppositions at issue in the motion for sanctions are now moot, the court is not inclined to issue sanctions.    The court does recognize that Georgeson Defendants' motion is not completely misplaced.   Neither the Local Rules nor the Rules of Civil Procedure provide for "objections" to motions.   The September 17, 2007 and September 18, 2007 filings were clearly an attempt to convince the court not to grant Georgeson Defendants' motions, and as such, these documents were oppositions to

11

Georgeson Defendants' motions.[4]  This file already contains a significant amount of filings, and all parties are reminded that any filing must be one allowed for by the Local Rules and Rules of Civil Procedure.  While the court wishes to encourage the parties to only file legitimate filings, the motion for sanctions before the court requests too much.  The remedy for a party filing a late opposition one time would be for the court to simply ignore the late opposition and/or strike the late opposition.  Ironically, it is Plaintiffs' September 17, 2007 and September 18, 2007 oppositions and the motion for sanctions arising from these filings that convinces the court that the validity of the amended complaint must be addressed now.  The court will deny the motion for sanctions at this time.   All parities are reminded of their responsibility to file only legitimate motions.

**ORDER**

Accordingly the court ORDERS that:

1. The amended complaint filed on May 10, 2007 is hereby STRUCK;
2. The pending motions to dismiss (Documents #100, #104, #107, #130, #138, #194, and #198) are DENIED as moot;
3. Plaintiffs may file any second amended complaint within thirty days of this order's date of service; and
4. Georgeson Defendants' motion for sanctions (Document #167) is DENIED.

IT IS SO ORDERED.

**Dated:   January 18, 2008**            **/s/ Anthony W. Ishii**
                                                                UNITED STATES DISTRICT JUDGE

---

[4] At the time the opposition to Georgeson Defendants' motions were due, Trustee Salven had not joined the complaint on behalf of Plaintiff DDJ LLC.  Had he asked, Trustee Salven would have been given additional time to oppose Georgeson Defendants' motions.  Because Plaintiff DDJ LLC had not yet had the opportunity to oppose the Georgeson Defendants' motions, the court wishes to clarify that it is primarily concerned with the late oppositions filed on behalf of Plaintiff DDJ, Inc., Plaintiff Joe Flores, and Plaintiff Connie Flores.