|  |  |
|---|---|
| **JOE FLORES, et al.,** | **CASE NO. 1:04-CV-6405 AWI DLB** |
| Plaintiffs | **ORDER DENYING MOTION FOR RECONSIDERATION** |
| v. | |
| **DENNIS HAGOBIAN, et al.,** | |
| Defendants | |

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

## I. Background

The current case stems from an earlier civil complaint (Civ. Case No. 99-5878 AWI DLB) filed by Joe and Connie Flores ("Flores Plaintiffs") against two entities DDJ, Inc. and DDJ, LLC ("DDJ Entities"). The earlier case concerned packing and marketing agreements that were entered into between the DDJ Entities and Flores Plaintiffs. On September 26, 1995, the Flores Plaintiffs entered into a packing and marketing agreement with the DDJ Entities. The Flores Plaintiffs then began delivering agricultural commodities for packing, selling, and shipping. The agreement was renewed in 1997 and 1998. Under the Perishable Agricultural Commodities Act, 7 U.S.C. §499a et seq. ("PACA"), under certain circumstances, proceeds from the sale of perishable commodities must be held in trust for the benefit of the grower. The Flores Plaintiffs sued, claiming violations of PACA, state law breach of contact, breach of fiduciary duty, fraud, and conversion. On July 25, 2003, the jury returned a special verdict in the Flores Plaintiffs' favor for $750,000.00. On March 11, 2004, the Clerk of the Court entered judgment in favor of Flores Plaintiffs. Shortly after judgment was filed, Flores Plaintiffs inquired about payment of judgment. On August 4, 2004, Flores Plaintiffs filed a Notice of Judgment Lien against the DDJ Entities with the Fresno County Records Office and with the Secretary of State on October 1, 2004.

The current case (Civ. Case No. 04-6405) was filed on October 15, 2004 and arises out of the Flores Plaintiffs' attempts to collect the earlier judgment. The Flores Plaintiffs, DDJ Entities, and WD Farming, LLC are named as plaintiffs. Defendants in this case ("Defendants") are a long list of individuals and entities that had some form of relationship with the DDJ Entities: Dennis Hagobian, Dennis Hagobian Residence Trust, Victoria Hagobian, Victoria Hagobian Residence Trust, Dennis Vartan, Dennis Vartan Family Trust, Dennis and Sandly L. Vartan Family Trust, Vartan Trust, Judith Yeramian, Judith Mary Yeramian Family Trust, Lee Yeremian Family Trust, Lee Yeramian Exempt QTIP Trust, Russell Davidson, William Davidson, Michael Hedberg, Yosemite Technologies, Inc., Rod Christensen, Taft & Traner, Inc., Norman Traner, Steven Taft, Eco Farm Fields, Inc., ECO Farms Sales, Inc., Georgeson & Belardinelli, C. Russell Georgeson, and Richard Belardinelli. The Flores Plaintiffs allege that the DDJ Entities had property and assets of $10,000,000 in 1999. On July 30, 1999, the DDJ Entities sold all assets and property to Taft & Traner, Inc., Eco Farm Fields, Inc., ECO Farms Sales, Inc., Norman Traner, and Steven Taft ("T&T Defendants") in return for cash in the amount of $2,183,698.00 and a promissory note for $1,741,158.45. On April 27, 2000, Norman Traner and Steven Taft personally guaranteed the satisfaction, performance, and observance concerning the purchase and timely payments of all property and assets purchased. T&T Defendants failed to honor the agreements and DDJ Entities then hired Georgeson & Belardinelli, C. Russell Georgeson, and Richard Belardinelli ("Georgeson Defendants") to sue T&T Defendants. The T&T Defendants in turn filed suit against Dennis Hagobian, Dennis Vartan, Judith Yeramian, Russell Davidson, William Davidson, Michael Hedberg, and WD Farming, LLC. There was a settlement agreement entered into on September 25, 2003, by which both DDJ Entities and T&T Defendants dismissed their suits. The Flores Plaintiffs allege that Georgeson Defendants simultaneously represented the DDJ Entities and the various parties T&T Defendants sued, resulting in a conflict of interest. The Flores Plaintiffs allege the other Defendants were DDJ Entities insiders and shareholders who wrongfully diverted the PACA trust proceeds for uses other than payment to Flores Plaintiffs. The complaint alleges that Defendants as a whole became secondarily liable as partners, members, and fiduciaries of the DDJ Entities for their failure to preserve the PACA trust. The complaint specifically alleges

fraudulent transfers under the Uniform Fraudulent Transfer Act, see Cal. Civ. Code § 3439, and improper distributions made in violation of the California Corporations Code.

On January 7, 2005, during the pendency of this case, the DDJ Entities filed for bankruptcy. James Edward Salven and Beth Maxwell Stratton ("Trustees") were appointed as trustees for the DDJ Entities. On April 25, 2006, the Trustees made a motion to intervene in this case. Doc. 25. Flores Plaintiffs opposed the motion. Docs. 31 and 37. Magistrate Judge Dennis Beck granted Trustees' motion to intervene on September 13, 2006. Doc. 50. Flores Plaintiffs did not appeal Judge Beck's order. On February 29, 2008, Flores Plaintiffs filed an amended complaint. Doc. 222. Defendants filed motions to dismiss for lack of subject matter jurisdiction. Docs. 230, 240, 251, 260, and 274. Flores Plaintiffs and the Trustees opposed the various motions. Doc. 284. Defendants' motions were granted on September 10, 2008. Doc. 351. The court found that res judicata barred the Flores Plaintiffs from pursuing their PACA claims and then declined to exercise supplemental jurisdiction over the state law claims. The case was thereafter closed. Flores Plaintiffs did not appeal this dismissal.

The Trustees and Flores Plaintiffs filed suit in state court. The Trustees then determined that the potential recovery could not justify the cost of pursuing litigation. The Flores Plaintiffs and the Defendants both sought to purchase the claims. The bankruptcy court ultimately found the Defendants' offer to be superior and approved the sale.

Now, Flores Plaintiffs have made a motion in this court to vacate the order of September 13, 2006 granting permission for the Trustees to intervene. They argue that the Trustees lacked standing to intervene under the in pari delicto doctrine. Moving under Fed. Rule Civ. Proc. 60(b)(4), the Flores Plaintiffs seek to have that order termed void. Defendants oppose the motion.

**II. Legal Standard**

Fed. Rule Civ. Proc. 60(b)(4) states "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:...(4) the judgment is void." "A final judgment is 'void' for purposes of Rule 60(b)(4) only if the court that considered it lacked jurisdiction, either as to the subject matter of the dispute

or over the parties to be bound, or acted in a manner inconsistent with due process of law." United States v. Berke, 170 F.3d 882, 883 (9th Cir. 1999).  "A judgment is not void merely because it is erroneous." United States v. Holtzman, 762 F.2d 720, 724 (9th Cir. 1985), citations omitted.

### III. Discussion

Flores Plaintiffs argue the order granting intervention was void due to failure of subject matter jurisdiction. Doc. 354, Brief, 1:19-2:2.  Ninth Circuit precedent recognizes that "A judgment is void [within the meaning of Rule 60(b)(4)] if the court that considered it lacked subject matter jurisdiction." Northwestern Energy, LLC v. Bull, 224 Fed. Appx. 581, 582 (9th Cir. 2007), citing Watts v. Pinckney, 752 F.2d 406, 409 (9th Cir. 1985).  Plaintiffs assert that:

> Because of the in pari delicto doctrine in conjunction with the Wagnor Doctrine [Shearson Lehman Hutton, Inc. v. Wagnor, 944 F.2d 114 (2nd Cir. 1991)] and the matter of [Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 428-30 (1972)] among other well established case law in California, as well as other state courts and district court[s] throughout the United States of America, law does not permit Trustees for DDJ, Inc.'s and DDJ, LLC's estate (hereinafter collectively referred to as DDJ Entities) to prosecute any sort of action against any third parties to include DDJ Entities['] shareholders, directors, officers, and members as alleged in this action.[] The in pari delicto defense is most broadly defined as 'the principle that a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing['] (Black's Law Dictionary, 806 (8th Ed. 2004), therefore and as further explained  herein below, DDJ Entities' aiding and abetting with third parties divest DDJ Entities of any standing to prosecute actions against its own shareholder[s], officers, directors, and members, for any wrongdoing in which DDJ Entities participated. The court for that reason was divested of personal and subject matter jurisdiction when rendering [the] September 13, 2006 order granting Trustees the right to intervene and vacating stay on this action.

Doc. 354, Brief, 2:5-19.  They restate their motion as "the only issue before this Court is whether or not the order of this Court of September 13, 2006 granting [Trustees] their motion to intervene...is void on its face pursuant to F.R.C.P. Rule 60(b)(4) or is not void. Doc. 360, Reply, 2:7-12.

First, the court had jurisdiction to issue the September 13, 2006 order granting intervention.  The Flores Plaintiffs believe the Trustees (and the bankruptcy estates of the dDJ Entities) lacked standing to sue.  The September 13, 2006 order was necessarily a determination of whether there was subject matter jurisdiction to allow Trustees to join the case.  It is axiomatic that "The district court ha[s] jurisdiction to determine its own subject matter jurisdiction." Wilson v.

4

A.H. Belo Corp., 87 F.3d 393, 396 (9th Cir. 1996). Even if the end ruling is erroneous, a court always has jurisdiction to make a determination as to subject matter jurisdiction. Erroneous orders are not void. United States v. Holtzman, 762 F.2d 720, 724 (9th Cir. 1985), citations omitted. Strictly speaking, the Flores Plaintiffs' motion must be denied as the objected to order is not void.

Second, Flores Plaintiffs' argument on the merits concerning Trustees' lack of standing is not convincing. The in pari delicto doctrine states "property delivered under an illegal contract cannot be recovered back by any party in pari delicto. The general rule, in its full Latin glory, is 'in pari delicto pari delicto potior est conditio defendentis,' or in case of equal fault the condition of the party defending is the better one....neither party to an illegal contract will be aided by the court, whether to enforce it or set it aside." Kardoh v. United States, 572 F.3d 697, 700 (9th Cir. 2009), citations omitted. The doctrine has "complex scope, contents, and effects." Perma Life Mufflers v. International Parts Corp., 392 U.S. 134, 140 (1968). In this case, the theory is that the DDJ Entities colluded with insiders to illegally move assets out of the DDJ Entities to avoid paying any judgment awarded the Flores Plaintiffs. Thus, in pari delicto invalidates any claims the DDJ Entites has against those they colluded with.

In the context of bankruptcy, claims regarding such malfeasance may properly belong to the creditors rather than the estate. A bankruptcy trustee can not sue to vindicate the claims of third parties; a bankruptcy trustee can only sue to recover claims belonging to the estate itself. Caplin v. Marine Midland Grace Trust Co., 406 U.S. 416, 428 (1972). The Second Circuit has found that the application of in pari delicto can deprive a bankruptcy trustee not only of a claim, but actual standing to sue. Shearson Lehman Hutton, Inc. v. Wagoner, 944 F.2d 114, 117-18 (2nd Cir. 1991) ("the trustee lacks standing because the claims he alleges on behalf of HMK's estate are really those of the noteholders, and because any action HMK itself might assert regarding Shearson's alleged participation in looting the corporation is barred by virtue of the fact that HMK's sole shareholder and officer was the principal that engaged in the looting"). In contrast, the Eighth Circuit, after surveying the extent case law on the subject, disagreed with the Second Circuit and stated "We agree with the First, Third, Fifth, and Eleventh Circuits that the collusion of corporate insiders with third parties to injure the corporation does not deprive the corporation of

standing to sue the third parties, though it may well give rise to a defense that will be fatal to the action....The in pari delicto doctrine is a defense. Even if an in pari delicto defense appears on the face of the complaint, it does not deprive the trustee of constitutional standing to assert the claim, though the defense may be fatal to the claim." Moratzka v. Morris, 482 F.3d 997, 1004 (8th Cir. 2007), citations omitted.

The courts of the Ninth Circuit have also rejected the Second Circuit's holding in Wagoner. Carramerica Realty Corp. v. NVIDIA Corp., 302 Fed. Appx. 514, 517 (9th Cir. 2008) ("The Creditors argue that Trustee standing is barred under [Wagoner]. However the Wagoner rule has been much criticized and we decline to follow it"); Donell v. Nixon Peabody LLP, 2012 U.S. Dist. LEXIS 126146, *12-13 (C.D. Cal. Sept. 5, 2012) ("the court declines to adopt the Wagoner rule and dismiss the Receiver's action for lack of standing"); Schneilling v. Thomas, 2005 U.S. Dist. LEXIS 6466, *27 n.2 (D. Nev. Apr. 1, 2005) ("The Second Circuit's application of imputation to a trustee has developed through that Circuit's use of imputation rules to determine whether a trustee has standing to pursue claims against third parties. See [Wagoner]. The Second Circuit thus has made imputation a federalized test for standing. Standing is a separate question from the application of state law equitable defenses [including in pari delicto] on the merits"). This result is consistent with overall Ninth Circuit practice which terms in pari delicto a "common law defense." Memorex Corp. v. IBM Corp., 555 F.2d 1379, 1381 (9th Cir. 1977). The Trustees in this case had standing to intervene.

**IV. Order**

The Flores Plaintiffs' Fed. Rule Civ. Proc. 60(b)(4) motions is DENIED.

IT IS SO ORDERED.

Dated:   September 6, 2013                     _____
                                                SENIOR DISTRICT JUDGE